UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

SABA AKHALKATSI                          CIVIL ACTION NO. 26-1228

                                         SECTION P

VS.

                                         JUDGE JERRY EDWARDS, JR.

ANGEL WOLFE, ET AL.                      MAG. JUDGE KAYLA D. MCCLUSKY

## MEMORANDUM RULING AND ORDER

Petitioner Saba Akhalkatsi,[1] a detainee in the custody of the Department of Homeland Security ("DHS") and the Bureau of Immigration and Customs Enforcement ("ICE"), petitions the Court for a writ of habeas corpus under 28 U.S.C. § 2241.[2]  Respondents oppose the petition. [doc. #s 5, 14].  For reasons below, Petitioner's request for habeas corpus is GRANTED.

## Background

Petitioner is a citizen of Georgia.  [doc. # 1, p. 3].  He entered the United States of America on December 4, 2023.  *Id.*  He was "issued a warrant for arrest, stating that he was 'within the country in violation of the immigration laws and is therefore liable to being taken into custody as authorized by section 236 of the Immigration and Nationality Act.'"  *Id.*  He was "released the same day on his own recognizance."  *Id.* at 3, 25-32.

---

[1] Petitioner's 'A-Number' is 249-259-844.

[2] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636, and the standing orders of the Court.

"Petitioner complied with release conditions including reporting, pursuing asylum, and obtaining work authorization for employment.  Petitioner complied with all requirements set by Respondents in this matter."  [doc. # 1, p. 4].

On March 24, 2026, ICE re-detained Petitioner "during a traffic stop while he was lawfully employed operating a truck in Alabama."  [doc. # 1, pp. 3-4].  "Petitioner had not committed nor was accused of any traffic or criminal violations when he was re-detained."  *Id.* at 4.

Petitioner filed this proceeding on April 17, 2026.  [doc. # 1, p. 6].  He claims that the Government is violating his right to substantive due process by continuing to detain him without a bond hearing.  *Id.* at 6-8.

The Government opposed the petition on June 15, 2026.  [doc. # 5].  Petitioner filed a reply on June 23, 2026.  [doc. # 6].

On June 25, 2026, Magistrate Judge McClusky recommended that this Court deny the petition, including Petitioner's claims that the Government violated his rights to substantive and procedural due process.  [doc. # 7].  As to his procedural due process claim, Magistrate Judge McClusky opined in part that "Petitioner does not claim that he lacked notice and an opportunity to be heard or respond before the Government deprived him of any liberty or property interest."  *Id.* at 5.  However, she added: "Of note, Petitioner does appear to raise a procedural due process claim with arguable merit in his reply.  For instance, he claims that he lacked notice of his re-detention and an opportunity to contest his re-detention.  However, courts do not consider claims raised for the first time in a reply."  *Id.* at 7.

On July 13, 2026, Petitioner filed an amended petition, claiming that ICE re-detained him "without prior written notice, opportunity to be heard, or any pre-deprivation hearing[,]"

2

violating his right to procedural due process.  [doc. # 13, p. 2].  Respondents opposed the amended petition on July 22, 2026.  [doc. # 14].

### Law and Analysis

Courts "examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the [government]; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (internal citations omitted).

### A. Liberty Interest

"No person shall . . . be deprived of . . . liberty . . . without due process of law[.]"  U.S. CONST. AMEND. V.   "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id*. at 690.

In *Morrissey v. Brewer,* 408 U.S. 471, 481 (1972), the Supreme Court held that the requirements of procedural due process applied to parole revocations.  The Court first noted that "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others." *Id.* at 482.  Buttressing the parolee's interest in liberty is the society's interest "in not having parole revoked because of erroneous information or because of an erroneous evaluation of the need to revoke parole" and its interest "in treating the parolee with basic fairness." *Id.* at 484.

The Supreme Court explained that parole "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life." *Id.* at 482. "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison." *Id.* "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions." *Id.* Therefore, a parolee possesses a protected interest in his "continued liberty." *Id.*

Here, Petitioner's release on recognizance was similar to the parole described in *Morrissey*. His release allowed him—with the Government's explicit permission—the freedom to live in the United States. Thus, Petitioner has a protected liberty interest in his release.[3]

In addition, immigration officials released Petitioner subject to certain conditions. *Id.* This was an "implicit promise" that his release would "be revoked only if he fail[ed] to live up to the [release] conditions," like in *Morrissey*. *See* 408 U.S. at 482. As other courts have held, "[w]hen a person [is released from custody and] lives in society at large for years, [reasonably believed that the law required his release], and only then faces re-incarceration on the ground that he was [erroneously] released, the prospect of re-incarceration has implications both for him

---

[3] *See, e.g., O.F.C. v. Almodovar*, 2026 WL 74262, at *7 (S.D.N.Y. Jan. 9, 2026) ("Both immigration parolees and those released on immigration bond are free to live their lives in this country and to form the . . . enduring attachments of normal life. . . . While released on bond, Petitioner was able to resume his life with his U.S.-citizen wife and his young U.S.-citizen children (one of whom was born while Petitioner was released). . . . The Court has little difficulty concluding that if the Government wishes to strip Petitioner of that liberty and these attachments, it must do so in a manner consistent with due process.") (internal quotation marks, quoted source, and record citation omitted).

and the other individuals in his life as substantial as those of the parolee in *Morrissey*." *Hurd*, 864 F.3d at 682.

More importantly, procedural due process dictates that before Respondents re-arrest Petitioner, he be afforded notice and the opportunity to at least address Respondents' contentions surrounding his re-detention. "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all." *Aurecchione v. Falco*, 2023 WL 6255529, at *12 (S.D.N.Y. Sept. 25, 2023) (citing *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) ("The fundamental requisite of due process of law is the opportunity to be heard. The hearing must be 'at a meaningful time and in a meaningful manner.'")). The two issues— procedural due process and the statutory interpretation of Sections 1225 and 1226 as addressed in *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 502 (5th Cir. 2026)—overlap but are distinct. Even assuming Petitioner is detained under Section 1225 and subject to mandatory detention under the statute, his statutory and regulatory statuses do not foreclose his procedural due process claim.[4]

Respondents argue that Petitioner is not entitled to any procedural due process—or, more specifically, no more than what Congress provides. [doc. # 14, p. 12]. They cite *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103 (2020), where the Court quoted *Nishimura Ekiu*, 142 U.S. 651 (1892): "as to 'foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law,' 'the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.'"

---

[4] *See Marceau v. Noem*, 2026 WL 368953, at *1 (W.D. Tex. Feb. 9, 2026) ("Marceau's constitutional interest in her liberty exists above and apart from the Immigration and Nationality Act and attendant regulations.") (citing *A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025)).

First, however, Respondents do not address whether Petitioner acquired a "domicil" or residence when the Government expressly allowed him to live in the United States for years. Second and more importantly, Respondents do not point to any law conferring the power to any executive or administrative officer to re-detain Petitioner without first providing notice of re-detention and an opportunity to be heard (i.e., procedural due process) after the Government released him to live and work in the United States. Thus, any decision by 'executives or administrative officers' to forego notice and an opportunity to be heard and respond prior to re-detention was not pursuant to "powers expressly conferred by Congress." Respondents argue that Petitioner is only entitled to the limited process that they and/or Congress offers, but as explained below neither they nor Congress offered or conferred *any* process *before* re-detaining him. Third, in *Thuraissigiam* the Court limited its ruling to only petitioners similarly situated to the petitioner in that case, concluding: "an alien *in respondent's position* has only those rights regarding admission that Congress has provided by statute." 591 U.S. at 140 (emphasis added). And Petitioner here is not in the same position as Thuraissigiam, who was not released on recognizance.

Respondents cite *Kaplan v. Tod*, 267 U.S. 228 (1925), for essentially the same proposition for which they cite *Thuraissigiam*. [doc. # 14, p. 20]. But *Kaplan* did not concern an alleged lack of procedural due process prior to detention. Respondents contend that in *Kaplan*, "the Supreme Court held that a child lawfully paroled into the care of relatives for nearly nine years—but never lawfully admitted—must be 'regarded as stopped at the boundary line' and 'had gained no foothold in the United States.'" *Id.* What Respondents omit, however, is that the Court concluded that the petitioner there was never "dwelling in the United States *within the meaning of [the Act. of 1910].*" *Kaplan*, 267 U.S. at 230. Here, neither party relies on or even mentions

the Act of 1910.  Respondents also argue that in *Kaplan*, "because [the petitioner] had never been lawfully admitted, the Due Process Clause did not require any additional procedures beyond what Congress provided." [doc. # 14, p. 20].  *Kaplan*, however, offers no such opinion.  Rather, it concluded that the petitioner did not become a citizen by virtue of her father's naturalization, that the petitioner could be deported on a warrant issued more than five years after she entered the country, that she had not "been dwelling in the United States within the meaning of the" Act of 1910, and that she never resided permanently in the country "within the later Act of March 2, 1907[.]"  *Kaplan*, 267 U.S. at 230.

Respondents cite *Landon v. Plasencia*, 459 U.S. 21, 21 (1982), for support, but its holding—that "INS has statutory authority to proceed in an exclusion hearing"—is irrelevant. As to any concerns of procedural process, the Court remanded "to allow the Court of Appeals to consider whether the respondent, a permanent resident alien, was accorded due process at the exclusion hearing." *Id.*

### B. *Mathews* Factors

"[I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

Here, the first factor above militates in favor of Petitioner as freedom from bodily restraint is the "most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 259

(2004); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).  To reiterate, "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690.

Petitioner established a liberty interest worthy of procedural protection when, with the Government's express permission, he exercised his freedom for over 2 years before the Government re-arrested him.   Respondents allowed Petitioner to establish his life in this country. Terminating his valued liberty likely inflicted a grievous loss.  *See generally Lopez Miranda v. Flores*, 2025 WL 3901908, at \*3 (W.D. Tex. Dec. 10, 2025) (holding that "noncitizens acquire a protectable liberty interest when they spend years establishing a life in the interior of the United States, regardless of their citizenship status.").[5]

Next, the second factor above—the risk of an erroneous deprivation of such interest through the procedures used—weighs in Petitioner's favor because the Government did not offer Petitioner any procedure before re-detaining him.  As Petitioner recounts, he "was not provided with: a. Advance notice of the alleged grounds for re-detention; b. An opportunity to contest the re-detention before a neutral decisionmaker; or c. Access to counsel prior to the deprivation of liberty."  [doc. # 13, p. 2].  The risk of erroneous deprivation of his liberty interest is obvious

---

[5] Even assuming *arguendo* that Petitioner's time living in the United States was insufficient to create a cognizable liberty interest (it was not), Respondents provided him with a liberty interest when they released him from custody.  It is well established that once the government opts to provide a liberty or property interest, it cannot arbitrarily revoke this benefit without due process of law.  *See Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (holding in the context of "good-time credits" for prisoners that "a person's liberty is equally protected [by the due process clause], even when the liberty itself is a . . . creation of the State"); *Morrissey*, 408 U.S. at 482 (noting "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee and often on others"); *Graham v. Richardson*, 403 U.S. 365, 374 (1971) (rejecting the concept that constitutional rights turn upon whether a governmental benefit is characterized as a "right" or as a "privilege").

where there is no pre-detention process to determine if, for instance, his circumstances have changed.

The third factor—the Government's interest, including any fiscal and administrative burdens that the additional or substitute procedural requirement would entail, if any—likewise weighs in Petitioner's favor.  There is nothing before the Court demonstrating a governmental interest in continuing to detain Petitioner.  While the Government has an interest in protecting the community and preventing flight, ICE already determined at least implicitly when it released Petitioner that he was not a flight risk or a danger to the community.  Further: "Petitioner complied with release conditions including reporting, pursuing asylum, and obtaining work authorization for employment.  Petitioner complied with all requirements set by Respondents in this matter."  [doc. # 1, p. 4].  But even if concerns of flight or protecting the community were present (nothing of record indicates that they are), the parties can address them at a pre-deprivation hearing.[6]  Finally, Respondents do not identify any fiscal or administrative burden in providing additional or substitute process.[7]

---

[6] *See Lopez-Arevelo*, 801 F. Supp. 3d at 687 ("[I]f such concerns exist, they would be squarely addressed if the Court were to grant the petition and order a bond hearing.").

[7] *See generally Alvarez Rico,* 2026 WL 522322, at *6 (S.D. Tex. Feb. 25, 2026) ("Indeed, given the high costs of detention, the fiscal and administrative burdens of providing noncitizens in these circumstances with some form of hearing pales in comparison with the burdens of re-detaining thousands of noncitizens who were previously released on recognizance."); *J.C.L.A.*, 2025 WL 2959250, at *7 ("[A]lthough the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is low.  In immigration court, custody hearings are routine and impose a minimal cost.  If the government wishes to re-arrest [petitioner] at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (internal quotation marks and quoted sources omitted).

Because all the factors support Petitioner, the Government violated his right to procedural due process under the Fifth Amendment to the United States Constitution.  Moreover, given the weight of the liberty interests at stake and the fact that a custody determination already occurred, immediate release is the appropriate remedy.  *See Alvarez- Rico* 2026 WL 522322 at *6 (immediate release); *J.U. v. Maldonado*, 805 F. Supp. 3d 482, 498 (E.D.N.Y. 2025) (ordering immediate release where the petitioner was re-detained "with no process at all, much less prior notice, no showing of changed circumstances, or an opportunity to respond"); *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025) ("Indeed, given the nature of the constitutional violation [petitioner] sustained here—i.e., Respondents' failure to conduct any kind of individualized assessment *before* [re-]detaining him—any post-deprivation review by an immigration judge would be inadequate.").

"The right to prior notice and a hearing is central to the Constitution's command of due process," as it "ensure[s] abstract fair play to the individual" and "minimizes substantively unfair or mistaken deprivations."  *U.S. v. James Daniel Good Real Prop.*, 510 U.S. 43, 53 (1993).  "The constitutional minimum of due process guarantees that notice and an opportunity to be heard be granted at a meaningful time and in a meaningful manner."  *Gibson v. Tex. Dep't of Ins.*, 700 F.3d 227, 239 (5th Cir. 2012) (quoting *Fuentes v. Shevin*, 407 U.S. 67, 80 (1972)) (internal quotation marks omitted).  "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).  "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'"  *Id.* (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has

10

held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty . . . . ").[8]

Accordingly, Petitioner is entitled to immediate release in accordance with the terms and conditions of his prior release, and the Government may not re-detain him without first providing him pre-deprivation process, i.e., meaningful notice of re-arrest[9] and a hearing which shall also include a meaningful opportunity to be heard and an opportunity to respond to any of the Government's reasons and asserted grounds for his re-arrest.[10]

Respondents contend: "No relief should be granted on a procedural due process claim until the Fifth Circuit has resolved the issue on rehearing in *Sosnava Rodriguez*." [doc. # 14, p.

---

[8] *But see James Daniel Good Real Prop.*, 510 U.S. at 59-61 ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

[9] The undersigned uses "re-arrest" and "re-detention" interchangeably in this Memorandum Ruling.

[10] *See, e.g.*, *Diallo v. Trump*, 1:25-cv-2012 (W.D. La. March 5, 2026); *Alvarez-Rico*, 2026 WL 522322, at *7 ("Respondents' re-detention of Alvarez-Rico without a pre-detention showing (or even allegation) of a change in his circumstances violated Alvarez-Rico's procedural due process rights."); *Lopez-Arevelo*, 801 F. Supp. 3d at 674; *Marceau*, 2026 WL 368953, at *2 (collecting similar cases and similar dispositions); *J.C.L.A.*, 2025 WL 2959250, at *1 (finding, where the petitioner was released on his own recognizance in August 2024, and re-arrested in September 2025, that the petitioner was likely to succeed on the merits of his procedural due process claim because he had a protected liberty interest in release); *Guillermo M. R. v. Kaiser*, 2025 WL 1983677, at *4 (N.D. Cal. July 17, 2025) (recognizing that "the liberty interest that arises upon release [from immigration detention] is *inherent* in the Due Process Clause"); *Ortega v. Kaiser*, 2025 WL 1771438, at *3 (N.D. Cal. June 26, 2025) (collecting cases finding that noncitizens who have been released have a strong liberty interest); *Vilela v. Robbins*, 2025 WL 3101334, at *6 (E.D. Cal. Nov. 6, 2025) ("Petitioner had been out of custody for nearly a year, and during that time, lived with her sister, worked, and developed ties to the community. Her detention denies her that freedom."); *Lnu v. Bondi*, 2026 WL 395290, at *7 (W.D. Wash. Feb. 12, 2026).

14].  However, the facts forming the basis of the due process arguments in the instant case differ from *Sosnava Rodriguez*.  Thus, the Court need not postpone Petitioner's release.

Finally, the undersigned addresses Respondents' argument that Petitioner's claim "does not sound in procedural due process at all." [doc. # 14, p. 16].  They argue essentially that because Petitioner is subject to mandatory detention under 8 U.S.C. § 1225, Petitioner's request for a bond hearing is irrelevant because the Government would still be required to detain him even if he established at a bond hearing that he was not a flight risk or a danger to the public.  *Id.*

However, as above, Petitioner claims that he did not receive notice and an opportunity to be heard before the Government re-arrested him.  Notice and an opportunity to be heard is the very essence of procedural due process.  In addition, the undersigned does not conclude that Petitioner is entitled to a bond hearing; rather, the undersigned concludes that Petitioner has a right to be heard and a right respond to any of the Government's reasons and asserted grounds for his re-arrest *before* revoking his prior release.  To reiterate, "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."  *Cleveland Bd. of Educ.*, 470 U.S. at 546.  And "[D]ue process does not hinge on whether one has a winning argument, a colorable argument, or any argument at all." *Aurecchione*, 2023 WL at *12.

### Conclusion[11]

For the reasons above, **IT IS ORDERED** that Petitioner Saba Akhalkatsi's request for habeas corpus is **GRANTED**.  Respondents, and the warden of River Correctional Center, shall (A) **immediately release** Petitioner from custody in accordance with the appropriate terms and

---

[11] The undersigned finds no need to address any claim or request for relief not addressed herein.

conditions and (B) notify Petitioner's counsel of the exact location and time of his release no less than two hours before his release.

In Chambers, Alexandria, Louisiana, this 23rd day of July, 2026.

_____
JERRY EDWARDS, JR.
UNITED STATES DISTRICT JUDGE